# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Nouri,<br><br>*Plaintiff,*<br><br>v.<br><br>University of Pittsburgh School of Law,<br><br>*Defendant.* | Civil Action No. _____<br><br><br><br><br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

As set forth below, Plaintiff Michael Nouri, by and through his undersigned counsel, Attorney Kristen Weidus and Ruder Law, LLC, files the following Americans with Disabilities Act, Rehabilitation Act, Fourteenth Amendment, breach of contract, Pennsylvania Human Relations Act, and Pennsylvania Fair Educational Opportunities Act counts against Defendant University of Pittsburgh School of Law (hereinafter "Pitt Law" or "Law School"). Plaintiff brings this Complaint against Defendant and respectfully shows the following:

### OVERVIEW OF PARTIES & CLAIMS

(1) Plaintiff Michael Nouri is an adult person residing at 825 Main Street, Apartment 3C, Honesdale, Pennsylvania 18431.

(2) Mr. Nouri was a student of Defendant Pitt Law between August 2022 and June 2023.

(3) Mr. Nouri has diagnoses of obsessive-compulsive disorder ("OCD"), generalized anxiety disorder ("anxiety" or "GAD"), and attention deficit hyperactivity disorder ("ADHD").

(4) All of these diagnoses were made before Mr. Nouri enrolled at Pitt Law.

(5) Defendant Pitt Law is one of the University of Pittsburgh ("Pitt" or "University")'s 16 schools and colleges.[1]

(6) Pitt describes itself as a "public institution."[2]

(7) Pitt maintains a principal place of business at the Cathedral of Learning, 4200 Fifth Avenue, Pittsburgh, Pennsylvania 15260.

(8) Defendant Pitt Law maintains a principal place of business at the Barco Law Building, 3900 Forbes Avenue, Pittsburgh, Pennsylvania 15260.

(9) Mr. Nouri brings six counts against Pitt Law based on disability discrimination, which he maintains the Law School engaged in when it failed to implement necessary and reasonable accommodations for his disabilities, dismissed him without implementing those accommodations, and arbitrarily and capriciously denied his petitions of academic probation and for readmission.

(10) With Count I, Mr. Nouri asserts that Pitt Law violated the Americans with Disabilities Act ("ADA"), which requires public entities and places of public accommodation to implement reasonable accommodations and modifications for people with disabilities so that such individuals can enjoy the benefits of their programs. Mr. Nouri maintains that Pitt Law dismissed him and denied his readmission without implementing reasonable and necessary accommodations agreed upon between him and the University-wide Disability Resources and Services Office.

(11) With Count II, Mr. Nouri alleges that Pitt Law violated Section 504 of the Rehabilitation Act, which imposes obligations similar to but independent of those of the ADA, based on the same conduct.

---

[1] *Academics*, UNIV. OF PITT., https://www.pitt.edu/academics (last accessed Apr. 28, 2025); *Schools & Colleges*, UNIV. OF PITT., https://www.academics.pitt.edu/schools-colleges (last accessed Apr. 28, 2025).
[2] *About*, UNIV. OF PITT., https://www.pitt.edu/about (last accessed Apr. 28, 2025).

(12) With Count III, Mr. Nouri argues that Pitt Law violated his Fourteenth Amendment due process right to freedom from arbitrary and capricious dismissal proceedings by failing to provide a clear rationale for his dismissal and the denial of his petition for readmission. Pitt Law provided just one sentence of "explanation" for the readmission denial. This single sentence was not substantive and indicated only that a faculty committee had unanimously voted to deny him readmission. This, Mr. Nouri submits, is a violation of his property interest in his education at Pitt Law and his right to fundamental fairness in quasi-judicial proceedings by state and state-related actors like Pitt.

(13) With Count IV, Mr. Nouri alleges that Pitt Law breached his enrollment contract. It is well-established law that the relationship between a university and its students is contractual, and that such a contract may be composed of various documents describing students' and educational institutions' mutual rights and obligations. Mr. Nouri points to both Pitt and Pitt Law's disability rights provisions, which expressly give students the right to freedom from disability discrimination and commit the University to complying with the ADA and Rehabilitation Act. He also refers to the American Bar Association ("ABA")'s accreditation standards, which Mr. Nouri submits that Pitt Law is subject to as an ABA-approved institution. Collectively, these and any other documents created by Pitt and Pitt Law describing mutual rights and obligations constitute an express or implied contract.

(14) In Count V, Mr. Nouri contends that Pitt Law violated the Pennsylvania Human Relations Act ("PHRA") based on the aforementioned discriminatory conduct. Mr. Nouri has received the required right-to-sue letter from the Pennsylvania Human Relations Commission, meaning he has exhausted his administrative remedies and may now initiate a civil action predicated on the PHRA.

(15) In Count VI, Mr. Nouri asserts that Pitt Law violated the Pennsylvania Fair Educational Opportunities Act ("PFEOA"), arguing that its disability-based discrimination constituted unfair educational practices outlawed by the Act. As Mr. Nouri has received a right-to-sue letter from the

Pennsylvania Human Relations Commission, he has exhausted his administrative remedies and may now initiate a civil action predicated on the PFEOA.

(16) Mr. Nouri seeks all legal, equitable, and declaratory relief available under the ADA, Rehabilitation Act, Section 1983 and the Fourteenth Amendment, Pennsylvania contract law, and the PHRA, including, but not limited to, compensatory damages, as well as reimbursement of his tuition and fees under the PFEOA. He also seeks attorneys' fees and costs.

## JURISDICTION & VENUE

(17) This Honorable Court has subject-matter jurisdiction over this action in the form of federal question jurisdiction over Mr. Nouri's ADA, Rehabilitation Act, and Fourteenth Amendment counts because these claims "aris[e] under the Constitution, laws, or treaties of the United States."[3]

(18) This Honorable Court has subject-matter jurisdiction in the form of supplemental jurisdiction over Mr. Nouri's breach of contract, PHRA, and PFEOA counts because these state law claims are based on the same facts as Mr. Nouri's Federal claims and "are so related to [those Federal claims] . . . that they form part of the same case or controversy under Article III of the United States Constitution."[4]

(19) The Western District of Pennsylvania is the appropriate venue for this action because Pitt Law resides[5] within Allegheny County, a political subdivision within this judicial district, and because "a substantial part of the events or omissions giving rise to the claim[s] occurred" there.[6]

## STATEMENT OF FACTS

(20) Mr. Nouri was diagnosed with OCD and GAD in 2011.

(21) Mr. Nouri was diagnosed with ADHD on or about October 30, 2017.

---

[3] 28 U.S.C.A. § 1331 (West).
[4] *Id.* at § 1367(a).
[5] *Id.* at §§ 1391(b)(1), 1391(c)(2).
[6] *Id.* at § 1391(b)(2).

(22) Mr. Nouri attended Pitt Law between August 2022 and June 2023.

(23) Before starting the Fall 2022 semester, Mr. Nouri contacted Pitt's Disability Resources and Services Office ("Disability Office" or "Office").

(24) Between July 28 and August 3, 2022, Mr. Nouri uploaded four files documenting his medical diagnoses to the Office's web portal, thereby notifying the University of his disability.

(25) As part of this paperwork, Mr. Nouri told the Office that his medical conditions caused substantial difficulty with focusing on tasks and that he required additional time for testing and assignments.

(26) On August 13, 2022, the Disability Office sent a letter to Mr. Nouri and the Law School.

(27) The letter told the Law School that Mr. Nouri had a documented medical condition that constituted a recognized disability.

(28) The Office noted that Mr. Nouri required an accommodation and instructed the Law School to provide 50% more time than the standard time allotted for examinations.

(29) The Office also instructed the Law School to create a testing environment with minimal distractions, stating that that environment could be accomplished by sending Mr. Nouri to the University Testing Center or providing a similar space within the Law School.

(30) There is no indication that Pitt Law used either of these options at any time throughout Mr. Nouri's time at Pitt.

(31) Inexplicably, the Office failed to include periodic breaks as an available accommodation, despite this being a well-recognized option already provided to Mr. Nouri by the Law School Admissions Council ("LSAC") when Mr. Nouri completed the Law School Admissions Test ("LSAT").

(32) Mr. Nouri began attending Pitt Law in late August 2022.

(33) During the Fall 2022 semester, Mr. Nouri encountered substantial learning challenges stemming from his medical conditions, especially his ADHD.

(34) Because the Law School failed to provide adequate additional testing time as required by his accommodation, Mr. Nouri was unable to finish the final exam in his Criminal Law course and subsequently received a "D" grade in that class.

(35) Concerned about his future performance, Mr. Nouri reached out to Dean of Students Alexandra Linsenmeyer immediately following the Criminal Law exam's conclusion.

(36) Dean Linsenmeyer explained to Mr. Nouri that he would not be barred from continuing his studies in the Spring 2023 semester.

(37) She did not explain the Law School's requirement that students maintain a grade point average ("GPA") of at least 2.25 out of 4.00 to continue into their second year of studies.

(38) By her own words in a July 10, 2023, email, she admitted that she "never discussed exclusion or the exclusion process at all" with Mr. Nouri.

(39) Mr. Nouri continued to struggle during the Spring 2023 semester because of the Law School's failure to adequately accommodate his disability.

(40) Moreover, although he had previously been approved to take twelve course credits per semester, he was forced to take sixteen credits in the Spring 2023 semester.

(41) Due to the Law School's failure to fully accommodate Mr. Nouri, he was certified "Unsatisfactory" ("U") for his Spring 2023 Civil Procedure course.

(42) Mr. Nouri was never informed that he was on academic probation because of his GPA.

(43) On or about June 27, 2023, then-Vice Dean and Associate Professor of Law Gerald Dickinson, Esq., informed Mr. Nouri that he would henceforth be automatically excluded from enrollment at the Law School because of his GPA, which fell below the minimum identified in Pitt Law's *Academic Standards Policy* for the Fall 2023 semester.

(44) Dean Dickinson stated that Mr. Nouri could seek readmission to the Law School and be put on academic probation by filing a petition with the University's Faculty Committee on Petitions and Academic Standards ("Committee") within 45 days.

(45) In early July 2023, Mr. Nouri contacted Dean Linsenmeyer about his academic performance, the exclusion letter, and his intent to seek additional time as an accommodation.

(46) When Dean Linsenmeyer replied on July 11, 2023, she summarized their December 2022 conversations about Mr. Nouri's criminal law exam issues and his difficulties with his Spring 2023 Civil Procedure course.

(47) Dean Linsenmeyer concluded the email by scheduling a meeting with herself, Mr. Nouri, and Director of Academic Success & Bar Exam Services and Adjunct Professor of Law Robert Wible, Esq.

(48) She explained, "Professor Wible and I meet with a student who plans to write a petition to the petitions committee in the hopes of the committee allowing you to continue on."

(49) Also on July 11, 2023, the Disability Office granted Mr. Nouri's request for an additional 25%-time extension (bringing his testing accommodation to +75% time), telling him that it had "determined that modifying [his accommodation] to 75% extended time on exams was ***reasonable*** based on the impact of disability and barriers experienced." (emphasis added).

(50) *Nota bene* the use of the word "reasonable," as both the ADA and Rehabilitation Act require covered entities to implement ***reasonable*** accommodations, as discussed in greater detail *infra*.

(51) On July 24, 2023, Mr. Nouri filed a timely petition of academic probation with the Committee.

(52) Therein, Mr. Nouri described his difficulties with ADHD, OCD, and anxiety in detail, and noted that the Disability Office had granted him an additional accommodation that would allow him to succeed in law school and improve his GPA.

(53) Mr. Nouri told the Committee that he was confident in his ability to improve his 2.148 GPA and exceed the 2.25 threshold.

(54) He was confident in this outcome because of the support the additional time would provide.

(55) He also noted that he felt that he had finally hit his stride in law school and that, because his GPA was only slightly below 2.25, he believed that crossing that GPA threshold was possible.

(56) In his July 24, 2023, petition, Mr. Nouri enclosed a letter from his healthcare provider confirming his ADHD diagnosis and explaining that the 2022-2023 school year had been difficult for him because of a lingering ADHD medication shortage caused by the COVID-19 pandemic.

(57) Mr. Nouri also told the Committee that he was working closely with Associate Dean for Equity & Inclusive Excellence and Professor of Legal Writing Dr. Ann Sinsheimer to develop an academic success plan for the remainder of his time at Pitt Law.

(58) He explained that Dean Sinsheimer had offered to speak in support of him to describe his performance in her class.

(59) On August 4, 2023—just ten days later—Dean Dickinson sent Mr. Nouri a second letter, this time telling him that the Committee had denied his petition.

(60) The letter stated that this decision was final and would not be subject to any additional review, but did not provide any reasons for the denial.

(61) Dean Dickinson also stated that Mr. Nouri could submit a petition for readmission to Pitt Law no earlier than June 28, 2023. [7]

---

[7] This date appears to be a scrivener's error. Dean Dickinson states that Mr. Nouri would only be eligible to submit the readmission petition after "one year from the date of the original exclusion letter, June 27, 2023." The original letter, however, was dated June 28, 2023.

(62) There is no indication that Pitt Law or the Committee spoke with Dean Sinsheimer or considered her discussions with Mr. Nouri about tutoring, independent study, and other strategies that she believed would help him to succeed moving forward.

(63) By failing to implement the original accommodation agreed to in the summer of 2022, Pitt Law discriminated against Mr. Nouri based on his disability.

(64) By failing to implement his accommodations, Pitt Law put Mr. Nouri in a position where his grades fell to such a level that he was subject to the exclusion process.

(65) As a result of Pitt Law's failure to fully and adequately implement the time and distraction accommodations that the Disability Office granted him, Mr. Nouri's academic performance in the 2022-2023 school year suffered, causing substantial anxiety, stress, and emotional disturbance.

(66) Pitt Law also caused Mr. Nouri substantial anxiety, stress, and emotional disturbance by failing to explain the exclusion rule, causing him to be blindsided by what was essentially a summary expulsion in the summer of 2023.

(67) Pitt Law's failure to implement the Summer 2023 expansion of Mr. Nouri's accommodations denied him the opportunity to improve his academic standing.

(68) Notwithstanding any assertions to the contrary, the cause of Mr. Nouri's academic performance was instead the result of the Law School's failure to implement the accommodations the University had instructed it to make.

(69) Pitt Law denied Mr. Nouri due process when it denied his petition without explanation, less than two weeks after it was filed.

(70) Pitt Law delayed Mr. Nouri's career trajectory by unenrolling him from law school and created substantial financial anxiety, as Mr. Nouri's educational loans entered repayment because he was no longer enrolled in a graduate program.

(71) Further, because Mr. Nouri relocated to Pittsburgh to attend Pitt Law, its actions caused him further emotional distress when he was forced to find employment in a city where he had no personal or professional contacts.

(72) Mr. Nouri filed a PHRC Complaint on or about January 30, 2024, wherein he alleged that Pitt Law had violated the PFEOA, PHRA, ADA, and Rehabilitation Act through its actions up to that time.

(73) In the PHRC Complaint, Mr. Nouri alleged as follows:

> In interpreting Section 5004(a) [part of the PFEOA], some courts have required plaintiffs to show evidence that their institutional [sic] of higher education knew about their disability and failed to accommodate it in order to prevail in PFEOA actions. *See, e.g., King v. Mansfield University of Pennsylvania*, No. 1:15- cv-00159, 2019 WL 1003612, at *8 (M.D. Pa. Feb. 28, 2019).

> Mr. Nouri can make this showing. As demonstrated by the facts recited above, multiple administrative and academic personnel at Pitt Law knew about Mr. Nouri's disability and requested disability-related accommodations in law school but still declined to fully implement . . . them before dismissing him.

> […]

> Here, Pitt Law and the University violated the PHRA and the ADA when they failed to provide Mr. Nouri the accommodations to which he is entitled. Pitt Law is a place of public accommodation under the PRHA because it is part of a public university, one of the educational institutions listed in § 954(*l*). As a covered entity, Pitt Law was required to provide Mr. Nouri with reasonable accommodations so as to provide him access to the facilities and privileges of his educational placement as a place of public accommodation. Pitt Law failed to do this when it (1) did not fully and adequately implement the accommodations agreed to in August 2022, and (2) when it dismissed Mr. Nouri before implementing the expanded accommodations agreed to in July 2023.

> Pitt Law knew about Mr. Nouri's medical conditions (*see supra* ¶¶ 4-5 [internal cross-reference]) and had defined them as a qualifying disability under its own policies (*see supra* ¶¶ 5, 14 [internal cross-reference]). The fact that Mr. Nouri did not meet the GPA threshold requirement by the exclusion rule does not excuse Pitt Law's failure to fully implement the accommodations that it agreed to implement to address a University- recognized disability.

> Mr. Nouri's accommodations are reasonable because the University agreed to them twice, once in August 2022 and again in July 2023. The only thing that is unreasonable is Pitt Law's decision to summarily exclude Mr. Nouri before fully

implementing his accommodations. Put simply, the only thing that Mr. Nouri asked for was more time to complete his assignments to level the playing field in light of his recognized disabilities, hardly a "fundamental" change to Pitt Law's services or educational mission.

Mr. Nouri, his medical providers, and the Disability Resources and Services Office all agree that Mr. Nouri is disabled and requires additional accommodations to succeed. Only Pitt Law and the Faculty Committee on Petitions and Academic Standards refuse to accept that Mr. Nouri's academic performance issues stem from his disability. Because they do not recognize this, their decision to exclude Mr. Nouri is *ipso facto* based on his status as a person with disabilities.

From Pitt Law's letters to Mr. Nouri, one could be forgiven for forgetting that Mr. Nouri does have a disability; the letters make no mention of his ADHD, OCD, anxiety, the measures the University agreed to implement from the very start of his time at Pitt Law, and another University department's decision to grant additional accommodations to help him address the problems in his academic performance. Whether Pitt Law wants to accept it or not, the fact remains that Mr. Nouri is a person with disabilities under the PRHA, ADA, and the University's own decisions.

[…]

Here, Mr. Nouri has a recognized disability under the University of Pittsburgh's policies and Section 701 of the Rehabilitation Act. His ADHD, OCD, and anxiety make focusing on tasks like completing examinations very difficult. Without reasonable accommodations, he cannot fully participate in his education and complete tasks like exam taking that are essential to his future career as an attorney.

As such, Pitt Law's failure to fully implement Mr. Nouri's August 2022 accommodations and decision to automatically exclude him without even attempting to implement the expanded July 2023 accommodations denied Mr. Nouri the opportunity to achieve an optimal employment outcome from his schooling.

Frankly, the Law School did not even give him a chance. Given the lack of evidence that the Committee or Law School considered Mr. Nouri's letter or the support of a tenured professor—Dr. Sinsheimer—this failure is all the more severe. Pitt Law knew that Mr. Nouri has recognized disabilities that interfered with his ability to work towards his career goals and knew that the University and professors in their own school recognized that Mr. Nouri needed additional assistance but failed to consider any of those factors.

These actions and inactions constitute violations of the Rehabilitation Act, as they have denied Mr. Nouri reasonable accommodation at the Law School and the support he is entitled to as a person with disabilities seeking to enter the professions.

(74) Pitt filed its PHRC Answer and Additional Defenses on or about April 5, 2024.

(75) On or about May 3, 2024, PHRC Investigator Michael Sutherland sent a rebuttal request to Mr. Nouri's counsel asking for additional information.

(76) On or about May 17, 2024, Mr. Nouri responded to the PHRC-assigned investigator's request for information.

(77) In doing so, Mr. Nouri submitted a letter answering Investigator Sutherland's questions and rebutting the assertions in Pitt's Answer.

(78) On July 25, 2024, Mr. Nouri emailed Dean Dickinson a petition for readmission to the School of Law.

(79) On August 7, 2024, Dean Dickinson replied to Mr. Nouri's email and shared two documents outlining the School of Law's response.

(80) The first document was a letter from Dean Dickinson to Mr. Nouri dated August 7, 2024, informing Mr. Nouri that the School of Law's Petitions Committee had denied his readmission petition on August 5, 2024.

(81) The second document was a "memorandum" from the Committee to Dean Dickinson informing him of its decision.

(82) The memorandum read, *in toto*, "The Petitions Committee unanimously voted to deny the Petition for Readmission of Michael Nouri following the passing of one year since the date of his exclusion and the denial of his 2023 Petition for Readmission."

(83) On or about January 25, 2025, Mr. Nouri filed an amended complaint with the PHRC under 16 Pa. Code § 42.35(a), which states, "The complaint or answer may be amended at any time prior to approval of a hearing on the merits and thereafter by leave of the Commissioners, hearing commissioners or permanent hearing examiner."

(84) In the amended PHRC complaint, Mr. Nouri argued that Pitt Law's August 2024 readmission denial was retaliation against him for filing the PHRC case.

(85) The PHRC issued a right-to-sue letter on February 3, 2025.

(86) The letter stated the following:

> It has been at least one year since you filed your complaint with the Pennsylvania Human Relations Commission. This is to notify you that you now have the right to bring an action in the appropriate Pennsylvania Court of Common Pleas based on the alleged violations of the PHRAct [sic] contained in your Commission complaint.

(87) Since his dismissal from Pitt Law and the subsequent denial of his readmission petition, Mr. Nouri has suffered considerable economic hardship and emotional distress.

(88) Mr. Nouri's undergraduate and law school loans went into repayment much earlier than they would have otherwise because of Pitt Law's decision, causing Mr. Nouri an unexpected and substantial financial burden.

(89) Mr. Nouri was forced to find new housing and employment in Pittsburgh, causing Mr. Nouri additional unexpected and substantial financial burdens.

(90) Pitt Law's actions caused a substantial increase in Mr. Nouri's anxiety and OCD symptoms as he struggled with the emotional and financial disruption to his life that Pitt Law caused.

(91) Mr. Nouri's professional development and career plans were substantially delayed, as Mr. Nouri lost critical time and effort reapplying to Pitt Law only to have it arbitrarily and capriciously deny him.

(92) Mr. Nouri was then forced to apply to other law schools, delaying his entry into the legal profession.

(93) Mr. Nouri suffered a substantial increase in his disability symptoms as a result of the stress caused by Pitt Law's actions. These symptoms (including panic attacks) caused him to be hospitalized on two occasions.

(94) Mr. Nouri also developed a nervous tic in the form of a compulsive need to clear his throat.

(95) Mr. Nouri will attend the Albany Law School starting in the fall of 2025.

(96) Mr. Nouri was forced to incur additional costs, including law school application fees, moving expenses, and higher tuition at Albany Law School.

## STATEMENT OF CLAIMS

## COUNT I

***Pitt Law violated the Americans with Disabilities Act by discriminating against Mr. Nouri based on his disabilities and by failing to implement reasonable accommodations such that he could enjoy the benefits of its program.***

(99) Mr. Nouri incorporates the preceding paragraphs by reference.

(100) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[8]

(101) Under Title II, "public entity" means, *inter alia*, a state or local government or any "department, agency, special purpose district, or other instrumentality" thereof.[9]

(102) Public and state colleges and universities are subject to Title II.[10]

(103) Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full enjoyment of goods, services, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[11]

(104) Under Title III, "public accommodation" means, *inter alia*, "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."[12]

---

[8] 42 U.S.C.A. § 12132 (West).
[9] *Id.* at § 12131(1)(A)-(B).
[10] *Bowers v. Nat'l Coll. Athletic Ass'n*, 9 F. Supp. 2d 460, 474 (D.N.J. 1998). The *Bowers* court observed that the University of Iowa and Temple University are subject to Title II. Mr. Nouri notes that Temple, like Pitt, is a "state-related" school, making it "public" within the meaning of the ADA.
[11] 42 U.S.C.A. § 12182(a) (West).
[12] *Id.* at § 12181(7)(J).

(105) Places of public accommodation must "make ***reasonable*** modifications in policies, practices, or procedures" so long as those modifications do not impose an undue burden or fundamentally alter the services provided.[13]

(106) *Nota bene* that the Disability Office determined that Mr. Nouri's accommodations were "reasonable."

(107) Places of public accommodation must also take reasonable steps to ensure that people with disabilities are not denied reasonable auxiliary aids and services so long as such actions would not impose an undue burden or alter the fundamental nature of the services provided.[14]

(108) Compensatory damages claims made under the ADA require a finding of intentional discrimination.[15]

(109) A showing of "deliberate indifference" satisfies this requirement.[16]

(110) Deliberate indifference requires the plaintiff to show that (1) the defendant knew that a harm to a federally protected right was substantially likely, and (2) the defendant failed to act upon that likelihood.[17]

(111) The deliberate indifference standard "does not require a showing of personal ill will or animosity toward the disabled person."[18]

(112) Mr. Nouri argues that Pitt Law is subject to Title II of the ADA because it is a public (state-related) school.

(113) As stated above, Pitt represents itself as a "public institution."[19]

---

[13] 42 U.S.C.A. § 12182(b)(2)(A)(ii) (West) (emphasis added); *see generally PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001).

[14] 42 U.S.C.A. § 12182(b)(2)(A)(iii) (West).

[15] *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013).

[16] *Id.*

[17] *Id.* at 263-64.

[18] *Id.* at 263.

[19] *About*, UNIV. OF PITT., https://www.pitt.edu/about (last accessed Apr. 28, 2025).

(114) In the alternative, Mr. Nouri argues that Pitt Law is subject to Title III of the ADA because it is a place of public accommodation.

(115) Mr. Nouri is protected by the ADA because he has multiple disability diagnoses (OCD, GAD, and ADHD) "that substantially limit[] one or more major life activities" and has "a record of such an impairment" in the form of his medical records and the material submitted to Pitt requesting disability accommodations.[20]

(116) Mr. Nouri was also "regarded as having such an impairment" by Pitt by virtue of its Disability Office receiving his documentation and sharing accommodation instructions with Pitt Law.

(117) The specific major life activities limited by Mr. Nouri's disabilities include "learning, reading, concentrating, thinking, and communicating."[21]

(118) As either a public entity or a public accommodation, Pitt Law could not lawfully discriminate against Mr. Nouri based on disability and was affirmatively required to implement reasonable accommodations to enable Mr. Nouri to access Pitt Law's benefits despite his disability status.

(119) Pitt Law discriminated against Mr. Nouri by failing to implement the accommodations the Disability Office informed it that Mr. Nouri was entitled to throughout the time he was enrolled at the University.

(120) Pitt Law further discriminated against Mr. Nouri by forcing him to take sixteen credits during the Spring 2023 semester, even though he had previously been approved to take twelve credits a semester.

---

[20] 42 U.S.C.A. § 12102(1)(A)-(B) (West).
[21] *Id.* at § 12102(2)(A).

(121) Pitt Law also discriminated against Mr. Nouri by failing to account for his disability status when it automatically excluded him from enrollment for the Fall 2023 semester.

(122) By that time, Pitt Law knew that Mr. Nouri had disabilities, was entitled to accommodations, and that his grades were suffering for disability-based reasons, especially related to concentrating and working during law school exams.

(123) Pitt Law then continued to discriminate against Mr. Nouri when it failed to implement the July 2023 accommodations that the Disability Office approved.

(124) Instead of implementing these accommodations, Pitt Law continued to disregard Mr. Nouri's disability status by ignoring the difficulties with ADHD, OCD, and anxiety that Mr. Nouri described in his July 2023 petition of academic probation.

(125) As part of this process, Pitt Law also ignored Mr. Nouri's belief that he could improve his GPA with the new accommodations, his commitment to working with Dean Sinsheimer to develop an improvement plan, and the letter from Mr. Nouri's healthcare provider.

(126) Pitt Law also ignored the role that an ADHD medication shortage played in Mr. Nouri's performance.

(127) Pitt Law continued to engage in disability discrimination by denying his petition for readmission.

(128) Mr. Nouri submits that this denial (made in August 2024) was retaliatory, as it closely followed the filing of his PHRC complaint.

(129) Even if this denial was not retaliatory, it was discriminatory, as the Committee failed to provide virtually ***any*** reason for the denial.

(130) This was arbitrary decision-making that failed to account for Mr. Nouri's already expressed commitment to improving his performance by using additional accommodations, working with

Dean Sinsheimer to develop and follow an improvement plan, and the letter from his healthcare provider.

(131) Contrary to the banner on Pitt Law's website declaring "You Are Welcome Here," with this decision, Pitt Law made clear that Mr. Nouri was not welcome and that Pitt Law had zero interest in implementing reasonable accommodations approved by the Disability Office and an improvement plan developed with **one of its own deans**.[22]

(132) Pitt Law did not even give Mr. Nouri a chance to improve with these accommodations.

(133) This is all the more egregious because the accommodations would not have imposed an undue burden or changed the nature of Pitt Law's programming.

(134) Providing additional time for one student to complete tests imposes no additional expenses and no change to the substance of Pitt Law's program.

(135) Indeed, the Disability Office had identified the University's Testing Center, a designated place for students who need testing accommodations, as a readily available option.

(136) The Disability Office had already determined that the accommodations were necessary and reasonable.

(137) These acts of discrimination constitute deliberate indifference, as Pitt Law's employees knew or should have known that failing to implement reasonable accommodations would violate Mr. Nouri's rights under the ADA.

(138) Because Mr. Nouri is a protected person with a disability under the ADA, Pitt Law is subject to the Act, Pitt Law acted with deliberate indifference by actively refusing to implement reasonable accommodations for Mr. Nouri's disabilities, and those accommodations would not have

---

[22] *About*, UNIV. OF PITT. SCH. OF L., https://www.law.pitt.edu/about (last accessed Apr. 28, 2025) ("You Are Welcome Here[.] Pitt is an esteemed academic and economic institution consistently ranked among the top universities in the country.").

resulted in an undue burden or fundamentally altered the services that Pitt Law provides, Mr. Nouri

is entitled to compensatory damages as a remedy for Pitt Law's violation of the ADA.

**WHEREFORE**, Plaintiff Michael Nouri respectfully requests that this Honorable Court find

that Defendant University of Pittsburgh School of Law violated the Americans with Disabilities Act

and award him all legal, equitable, and declaratory remedies available under the Act, including—but

not limited to—compensatory damages.

## COUNT II

***Pitt Law violated Section 504 of the Rehabilitation Act by failing to implement reasonable disability accommodations such that he could enjoy the benefits of its program.***

(139) Mr. Nouri incorporates the preceding paragraphs by reference.

(140) Section 504 of the Rehabilitation Act ("Section 504") provides that

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.[23]

(141) Like the ADA, Section 504 makes it illegal to discriminate against someone because of

their disability and requires places of public accommodation like schools to make reasonable

accommodations for those disabilities.[24]

(142) Also like the ADA, claims for compensatory damages under Section 504 require a finding

of intentional discrimination.[25]

(143) A showing of "deliberate indifference" satisfies this requirement.[26]

---

[23] 29 U.S.C.A. § 794(a) (West).
[24] *Id.* at § 701 (West).
[25] *S.H.*, 729 F.3d at 262.
[26] *Id.*

(144) The legal framework for deliberate indifference is discussed *supra*. Those paragraphs are incorporated here by reference.

(145) Upon information and belief, Pitt and Pitt Law receive Federal funding, making them subject to Section 504.

(146) As a recipient of Federal funding, Pitt Law could not lawfully discriminate against Mr. Nouri based on disability and was affirmatively required to implement reasonable accommodations to enable him to access its program and benefits despite his disability status.

(147) The Rehabilitation Act uses the same definition of "disability" as the ADA.[27]

(148) Mr. Nouri is protected by the Rehabilitation Act because he has multiple disability diagnoses (OCD, GAD, and ADHD) "that substantially limit[] one or more major life activities" and has "a record of such an impairment" in the form of his medical records and the material submitted to Pitt requesting disability accommodations.[28]

(149) Mr. Nouri was also "regarded as having such an impairment" by Pitt by virtue of its Disability Office receiving his documentation and sharing accommodation instructions with Pitt Law.

(150) The specific major life activities limited by Mr. Nouri's disabilities include "learning, reading, concentrating, thinking, and communicating."[29]

(151) Pitt Law discriminated against Mr. Nouri by failing to implement the accommodations the Disability Office informed it that Mr. Nouri was entitled to throughout the time he was enrolled at the University.

---

[27] 29 U.S.C.A. § 705(9)(B) (West) (cross-referencing the ADA definition of "disability").
[28] 42 U.S.C.A. § 12102(1)(A)-(B) (West).
[29] *Id.* at § 12102(2)(A).

(152) Pitt Law further discriminated against Mr. Nouri by forcing him to take sixteen credits during the Spring 2023 semester, even though he had previously been approved to take twelve credits a semester.

(153) Pitt Law also discriminated against Mr. Nouri by failing to account for his disability status when it automatically excluded him from enrollment for the Fall 2023 semester.

(154) By that time, Pitt Law knew that Mr. Nouri had disabilities, was entitled to accommodations, and that his grades were suffering for disability-based reasons, especially related to concentrating and working during law school exams.

(155) Pitt Law then continued to discriminate against Mr. Nouri when it failed to implement the July 2023 accommodations that the Disability Office approved.

(156) Instead of implementing these accommodations, Pitt Law continued to disregard Mr. Nouri's disability status by ignoring the difficulties with ADHD, OCD, and anxiety that Mr. Nouri described in his July 2023 petition of academic probation.

(157) Pitt Law also ignored the role that an ADHD medication shortage played in Mr. Nouri's performance.

(158) As part of this process, Pitt Law also ignored Mr. Nouri's belief that he could improve his GPA with the new accommodations, his commitment to working with Dean Sinsheimer to develop an improvement plan, and the letter from his healthcare provider.

(159) Pitt Law continued to engage in disability discrimination by denying his petition for readmission.

(160) Mr. Nouri submits that this denial (made in August 2024) was retaliatory, as it closely followed the filing of his PHRC complaint.

(161) Even if this denial was not retaliatory, it was discriminatory, as the Committee failed to provide virtually ***any*** reason for the denial.

(162) This was arbitrary decision-making that failed to account for Mr. Nouri's already expressed commitment to improving his performance by using additional accommodations and working with Dean Sinsheimer to develop and follow an improvement plan.

(163) Contrary to the banner on Pitt Law's website declaring "You Are Welcome Here," with this decision, Pitt Law made clear that Mr. Nouri was not welcome and that it had zero interest in implementing reasonable accommodations approved by the Disability Office and an improvement plan developed with **one of its own deans**.[30]

(164) Pitt Law did not even give Mr. Nouri a chance to improve with these accommodations.

(165) This is all the more egregious because the accommodations would not have imposed an undue burden or changed the nature of Pitt Law's programming.

(166) Providing additional time for one student to complete tests imposes no additional expenses and no change to the substance of Pitt Law's program.

(167) Indeed, the Disability Office had identified the University's Testing Center, a designated place for students who need testing accommodations, as a readily available option.

(168) The Disability Office had already determined that the accommodations were necessary and reasonable.

(169) These acts of discrimination constitute deliberate indifference, as Pitt Law's employees knew or should have known that failing to implement reasonable accommodations would violate Mr. Nouri's rights under the Rehabilitation Act.

---

[30] *About*, UNIV. OF PITT. SCH. OF L., https://www.law.pitt.edu/about (last accessed Apr. 28, 2025) ("You Are Welcome Here[.] Pitt is an esteemed academic and economic institution consistently ranked among the top universities in the country.").

(170) Pitt Law was deliberately indifferent because it knew that Mr. Nouri was a student with disabilities protected by law and failed to implement reasonable modifications or accommodations, as discussed *supra*.

(171) Because Mr. Nouri is a protected person with a disability under Section 504, Pitt Law is subject to Section 504, Pitt Law acted with deliberate indifference by actively refusing to implement reasonable accommodations for Mr. Nouri's disabilities, and those accommodations would not have resulted in an undue burden or fundamentally altered the services that Pitt Law provides, Mr. Nouri is entitled to compensatory damages as a remedy for Pitt Law's violation of Section 504.

**WHEREFORE**, Plaintiff Michael Nouri respectfully requests that this Honorable Court find that Defendant University of Pittsburgh School of Law violated the Rehabilitation Act and award him all legal, equitable, and declaratory remedies available under the Act, including—but not limited to—compensatory damages.

## COUNT III

***Pitt Law violated Mr. Nouri's Fourteenth Amendment due process rights when it arbitrarily and capriciously dismissed him and rejected his petitions of academic probation and for readmission.***

(172) Mr. Nouri incorporates the preceding paragraphs by reference.

(173) The Fourteenth Amendment to the U.S. Constitution provides, *inter alia*, "No State shall . . . deprive any person of life, liberty, or property, without due process of law."[31]

(174) Section 1983 creates a right to a civil action to enforce the protections of the Fourteenth Amendment, providing that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

---

[31] U.S. CONST. amend. XIV, § 1.

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[32]

(175) Mr. Nouri asserts that he had a property interest in his studies at Pitt Law, as an enrollment contract existed between him and Pitt Law for the reasons discussed *infra* regarding his breach of contract claim, as well as a liberty interest in the fundamental fairness of quasi-judicial proceedings like the decision-making of a government-related entity like Pitt Law.

(176) Mr. Nouri asserts that Pitt Law's decisions to dismiss him and then deny him readmission were substantively and procedurally deficient.

(177) Although the U.S. Supreme Court has been slow to intervene in "academic decisionmaking [sic]" related to "academic dismissal," the Court has not rejected lower court decisions asserting that academic dismissals can be challenged when they are arbitrary or capricious.[33]

(178) The U.S. Court of Appeals for the Tenth Circuit, for example, has allowed such suits to proceed, and observed that "[g]overning officials of a school . . . exercise quasi judicial functions. In such capacity, their decisions are conclusive, providing that their action has been in good faith and not arbitrary" in a case cited by the Supreme Court in *Horowitz.*[34]

(179) The U.S. Supreme Court has upheld academic performance-based dismissals where educational institutions reach such decisions "conscientiously and with clear deliberation."[35]

(180) The U.S. Court of Appeals for the Third Circuit has echoed this framework, allowing such suits to proceed and upholding academic dismissals where the dismissal decision is supported by evidence from a faculty member who has the most knowledge of the plaintiff's capabilities or

---

[32] 42 U.S.C.A. § 1983 (West).
[33] *See Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78, 91-92 (1978).
[34] *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir. 1975) (citation omitted).
[35] *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225 (1985).

attainments that is "clear and forthright," and not "beyond the pale of reasoned academic decisionmaking [sic]."[36]

(181) The Third Circuit has upheld such decisions where the student is given a chance to remedy their academic deficiencies.[37]

(182) Something is "arbitrary" when it "exist[s] or com[es] about seemingly at random or by chance or as a capricious and unreasonable act of will"; "based on or determined by *individual preference* or convenience rather than by necessity or the intrinsic nature of something"[38]; and "*made without consideration of or regard for facts, circumstances, fixed rules, or procedures*."[39]

(183) Something is "capricious" when it is "impulsive," "unpredictable,"[40] and "*contrary to the evidence*."[41]

(184) Mr. Nouri also refers the Court to the legal definition of "arbitrary and capricious" by way of analogy. In administrative law, something is "arbitrary and capricious" when a government actor "offered an explanation for its decision that runs counter to the evidence" and when it fails to show that it "*considered relevant factors and articulated a rational connection between the facts found and choice made*."[42]

---

[36] *Mauriello v. Univ. of Med. and Dentistry of New Jersey*, 781 F.2d 46, 52 (3d Cir. 1986) (citations omitted).

[37] *Kadakia v. Rutgers*, 633 Fed. App'x. 83, 88 (3d Cir. 2015) (citation omitted).

[38] *Arbitrary*, MERRIAM-WEBSTER (APR. 27, 2025), at Senses 1(a)-(b), https://www.merriam-webster.com/dictionary/arbitrary (emphasis added).

[39] *Arbitrary*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

[40] *Capricious*, MERRIAM-WEBSTER (Apr. 23, 2025), https://www.merriam-webster.com/dictionary/capricious.

[41] *Capricious*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

[42] 2 AM. JUR. 2d *Administrative Law* § 477 (Jan. 2025 Updated) (emphasis added) (citing, among other cases, *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), and *AT&T Corp. v. F.C.C.*, 349 F.3d 692 (D.C. Cir. 2003)).

(185) Mr. Nouri submits that Pitt Law's Exclusion Letter and subsequent actions enforcing that letter did not provide sufficiently well-reasoned and factually supported bases for dismissing him from the program.

(186) Pitt Law never gave him an opportunity to improve his academic performance.

(187) As noted above, Pitt Law did not clearly communicate the exclusion policy to Mr. Nouri and instead repeatedly indicated to him that he could continue his studies. This abruptly changed with the Exclusion Letter.

(188) The only reason the Exclusion Letter provided was that Mr. Nouri's grade point average fell below the required threshold.

(189)  The Letter did not acknowledge Mr. Nouri's disability status.

(190) Pitt Law's denial of Mr. Nouri's petition for readmission continued this pattern of arbitrary and capricious decision-making.

(191) There is no indication that the Committee reviewed the substance of Mr. Nouri's case, including his academic abilities and disability status, ***at all***.

(192) A one-sentence memorandum like the one that the Committee shared with Dean Dickinson is not made "conscientiously and with clear deliberation," as there is no evidence of ***any*** specific considerations or deliberations.

(193) As it stands, the one-sentence memorandum was nothing more than a rubber stamp reifying a decision that had already been made.

(194) The one-sentence memorandum was "beyond the pale of academic decisionmaking [sic]" because, *inter alia*, it did not provide any evidence of the involvement of someone like Dean Sinsheimer, who had the most knowledge of Mr. Nouri's abilities, and because the decision was not "clear and forthright."

(195) Rather, the memorandum is neither clear nor forthright, as it provides no discernible principle or rationale indicating how the Committee reached its decision.

(196) Instead of being "clear and forthright," the one-sentence memorandum is opaque and pretextual.

(197) The absence of **any** written explanation of the Committee's decision indicates that Pitt Law's actions were arbitrary and capricious.

(198) Mr. Nouri argues that Pitt Law's denial of his reinstatement petition was arbitrary because it was done without any reasoned analysis, as the written record is bereft of any discernible rationale or consideration of Mr. Nouri's facts and circumstances.

(199) The lack of evidence reveals individual preferences of the Committee and reflexive and impulsive decision-making, not a careful consideration of Mr. Nouri's case on its own merits.

(200) Mr. Nouri argues that Pitt Law's denial of his petition of academic probation was similarly arbitrary and capricious, as Pitt Law entirely ignored Mr. Nouri's receipt of new accommodations from the Disability Office, his willingness to work with Dean Sinsheimer to develop an improvement plan, and the letter he shared from his healthcare provider.

(201) Pitt Law's decision to ignore the Disability Office's new accommodations, refusal to implement those and the preexisting accommodations before excluding Mr. Nouri, and subsequent failure to acknowledge its own shortcomings when reviewing Mr. Nouri's petition for readmission are all arbitrary and capricious actions lacking any objective justification.

(202) If Pitt Law had such a justification, it should—and more importantly, **would**—have expressed them.

**WHEREFORE**, Plaintiff Michael Nouri asks this Honorable Court to find that Defendant University of Pittsburgh School of Law violated his Fourteenth Amendment due process rights by arbitrarily and capriciously excluding him from its program and then denying him readmission and

to award all available legal, equitable, and declaratory relief, including—but not limited to—compensatory damages.

## COUNT IV

***Pitt Law breached its enrollment contract with Mr. Nouri by violating the terms of the applicable nondiscrimination, student rights, and accreditation policies, and by breaching the implied duty of good faith when it engaged in unfair and unreasonable conduct.***

(203) Mr. Nouri incorporates the preceding paragraphs by reference.

(204) Both Pitt and Pitt Law have policies related to students with disabilities.

(205) Mr. Nouri submits that these policies constituted a contract between him and the University, and that Pitt Law breached this contract by engaging in disability discrimination.

(206) Mr. Nouri pleads the existence of an express contract in the first instance and an implied one in the alternative.

(207) The relationship between a student and their college or university is contractual.[43]

(208) A plaintiff bringing a breach of contract claim must show the existence of a contract, breach of that contract, and resulting damages.[44]

(209) A student's breach of contract claim against a college or university must be based on a specific contractual undertaking.[45]

(210) Such claims may be based on an implied contract theory.[46]

(211) A breach of the implied duty of good faith is a breach of contract.[47]

(212) Pitt's 2024 *Student Code of Conduct* explicitly creates a right to nondiscrimination:

> With the approval of the Board of Trustees, ***the University affirms the following Student rights and privileges***: […] ***To be free from discrimination on the basis of*** race, color, religion, national origin, ancestry, sex, age, marital status, familial status,

---

[43] *McAvoy v. Dickinson Coll.*, 115 F.4th 220, 234 (3d Cir. 2024).
[44] *Doe v. Univ. of Sciences*, 961 F.3d 203, 211 (3d Cir. 2020).
[45] *Figueroa v. Point Park Univ.*, 553 F. Supp.3d 259, 267 (W.D. Pa. 2021).
[46] *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 311-12 (3d Cir. 2023).
[47] *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 627 (W.D. Pa. 2013).

sexual orientation, gender identity and expression, genetic information, **disability**, or status as a veteran.[48]

(213) "Affirm" means "validate," "confirm," "to state positively," and "to assert . . . as valid or confirmed."[49]

(214) The 2023 edition of the *Student Code of Conduct* used identical language.[50]

(215) Upon reasonable belief, the 2022 edition of the *Student Code of Conduct*, which would have been the version of the *Code* in effect at the time of the Exclusion Letter, used the same language, as both the 2023 and 2024 University-wide editions used that language, as did the 2022 edition of the University's Johnstown campus's *Student Code of Conduct*.[51]

(216) While the *Student Code of Conduct* itself declares that it is "not a contract," the fact remains that the University affirmatively committed itself to the idea that students have a right to freedom from disability discrimination in promulgating the same disability rights provision year after year at multiple campuses.[52]

(217) The *Student Code of Conduct* is a written statement of the University's policies and obligations *vis-à-vis* its students.

(218) Pitt Law's *Students with Disabilities Policy* commits the Law School to accommodating people with disabilities:

> The University of Pittsburgh School of Law's **policy and practice** is to comply with the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the

---

[48] *Student Code of Conduct*, UNIV. OF PITT. (Aug. 1, 2024), at 8, https://www.studentaffairs.pitt.edu/sites/default/files/assets/Student%20Code%20of%20Conduct%20_Published%5B13%5D.pdf (emphasis added).

[49] *Affirm*, MERRIAM-WEBSTER (Apr. 24, 2025), at Senses 1-2, https://www.merriam-webster.com/dictionary/affirm.

[50] *Student Code of Conduct*, UNIV. OF PITT. (Aug. 19, 2023), at 8, https://www.studentaffairs.pitt.edu/sites/default/files/assets/Student%20Code%20of%20Conduct%20_Published.pdf.

[51] *Student Code of Conduct*, UNIV. OF PITT. JOHNSTOWN (Aug. 22, 2022), https://www.johnstown.pitt.edu/sites/default/files/Student%20Code%20of%20Conduct%20-2022-2023.pdf.

[52] *Student Code of Conduct*, *supra* note 48, at 6.

Commonwealth of Pennsylvania requirements regarding students and applicants with disabilities. Under these laws, ***no qualified individual with a disability shall be denied access to or participation in the University of Pittsburgh School of Law's services, programs, and activities***.[53]

(219) This passage identifies a specific undertaking.

(220) Indeed, to read this as a merely aspirational statement would be to render the passage superfluous, as Pitt Law is already subject to Section 504 and the ADA, whether or not it admits as much in its own documents.

(221) The plain language of the *Policy* also supports this reading. The document ***does not*** declare it to be the "belief," "hope," or "aspiration" that students have a right to be free from disability discrimination. Rather, the *Policy* expressly states that it is Pitt Law's "policy and practice" to respect that right.

(222) Rather than being mere aspirations, policies are "definite course[s] or method[s] of action . . . [used] to guide and determine present and future decisions."[54] A practice is "a repeated or customary action" and "the usual way of doing something."[55]

(223) Regardless, Section 504 and the ADA are not "opt-in" laws, meaning that Pitt Law's assertion one way or the other as to the applicability of the ADA and Section 504 to its operations is irrelevant. Pitt Law is subject to these statutes as a matter of law, not preference.

---

[53] *Policies & Procedures: Students with Disabilities*, UNIV. OF PITT. SCH. OF L., https://www.law.pitt.edu/student-resources/policies-procedures/students-disabilities (last accessed Apr. 23, 2025) (emphasis added).

[54] *Policy*, MERRIAM-WEBSTER (Apr. 22, 2025), at Sense 2(a), https://www.merriam-webster.com/dictionary/policy.

[55] *Practice*, MERRIAM-WEBSTER (Apr. 21, 2025), at Senses 1(b)-(c), https://www.merriam-webster.com/dictionary/practices.

(224) Further, as an ABA-approved law school, Pitt Law is also subject to the *ABA Standards and Rules of Procedure for Approval of Law Schools*.[56]

(225) Standard 309 of the 2023-2024 edition of the *ABA Standards* provides, *inter alia*, "A law school shall provide academic support designed to afford students a ***reasonable opportunity to complete the program of legal education***, graduate, and become members of the legal profession."[57]

(226) Again, *nota bene* the use of the word "reasonable."

(227) The ABA's Section of Legal Education and Admissions to the Bar, which produces the *ABA Standards and Rules*, is responsible for overseeing the ABA law school accreditation process.[58]

(228) Read together, these policies constitute a contract, be it express or implied.

(229) As such, Mr. Nouri argues that the *prima facie* elements of a breach of contract claim are present.

(230) Mr. Nouri submits that the arbitrary and capricious nature of Pitt Law's decision-making regarding the implementation of his accommodations, his dismissal, and the denial of his readmission did not provide a "reasonable opportunity" for him to access and complete Pitt Law's program.

(231) Pitt and Pitt Law's disability policies are written documents that expressly commit the University to following nondiscrimination practices and specifically list freedom from disability discrimination as a right enjoyed by Pitt students.

---

[56] *List of ABA-Approved Law Schools in Alphabetical Order*, Am. Bar Ass'n, https://www.americanbar.org/groups/legal_education/resources/aba_approved_law_schools/in_alphabetical_order/ (last accessed Apr. 29, 2025).

[57] *ABA Standards and Rules of Procedure for Approval of Law Schools 2023-2024*, Am. Bar Ass'n (2023), https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_to_the_bar/standards/2023-2024/2023-2024-aba-standards-rules-for-approval.pdf (emphasis added).

[58] *Law School Accreditation: The Law School Accreditation Process*, Am. Bar Ass'n, https://www.americanbar.org/groups/legal_education/accreditation/ (last accessed Apr. 29, 2025).

(232) These are *specific* undertakings outlined in multiple policy and procedure documents issued over multiple years and campuses.

(233) Indeed, Pitt Law even cites the *specific* laws that it is required to follow.

(234) Pitt Law breached this contract by engaging in disability discrimination and by breaching the implied duty of good faith.

(235) Pitt Law discriminated against Mr. Nouri by forcing him to take sixteen credits during the Spring 2023 semester, even though he had previously been approved to take twelve credits a semester.

(236) Pitt Law also discriminated against Mr. Nouri by failing to account for his disability status when it automatically excluded him from enrollment for the Fall 2023 semester. By that time, Pitt Law knew that Mr. Nouri had disabilities, was entitled to accommodations, and that his grades were suffering for disability-based reasons, especially related to concentrating and working during law school exams.

(237) Pitt Law then continued to discriminate against Mr. Nouri when it failed to implement the July 2023 accommodations that the Disability Office approved.

(238) Instead of implementing these accommodations, Pitt Law continued to disregard Mr. Nouri's disability status by ignoring the difficulties with ADHD, OCD, and anxiety that Mr. Nouri described in his July 2023 petition of academic probation.

(239) Pitt Law also ignored the role played by the ADHD medication shortage that Mr. Nouri notified the Law School about.

(240) As part of this process, Pitt Law also ignored Mr. Nouri's belief that he could improve his GPA with the new accommodations, his commitment to working with Dean Sinsheimer to develop an improvement plan, and the letter from his healthcare provider.

(241) Pitt Law continued to engage in disability discrimination by denying his petition for readmission.

(242) Mr. Nouri submits that this denial (made in August 2024) was retaliatory, as it closely followed the filing of his PHRC complaint.

(243) Even if this denial was not retaliatory, it was discriminatory, as the Committee failed to provide virtually ***any*** reason for the denial.

(244) This was arbitrary decision-making that failed to account for Mr. Nouri's already expressed commitment to improving his performance by using additional accommodations and working with Dean Sinsheimer to develop and follow an improvement plan.

(245) Contrary to the banner on Pitt Law's website declaring "You Are Welcome Here," with this decision, Pitt Law made clear that Mr. Nouri was not welcome and that it had zero interest in implementing reasonable accommodations approved by the Disability Office and an improvement plan developed with ***one of its own deans***.[59]

(246) Pitt Law did not even give Mr. Nouri a chance to improve with these accommodations.

(247) This is all the more egregious because the accommodations would not have imposed an undue burden or changed the nature of Pitt Law's programming.

(248) Providing additional time for one student to complete tests imposes no additional expenses and no change to the substance of Pitt Law's program.

(249) Indeed, the Disability Office had identified the University's Testing Center, a designated place for students who need testing accommodations, as a readily available option.

---

[59] *About*, UNIV. OF PITT. SCH. OF L., https://www.law.pitt.edu/about (last accessed Apr. 28, 2025) ("You Are Welcome Here[.] Pitt is an esteemed academic and economic institution consistently ranked among the top universities in the country.").

(250) The Disability Office had already determined that the accommodations were necessary and reasonable.

(251) Pitt Law breached the implied duty of good faith by unfair and unreasonable actions, including by refusing to implement the second round of Disability Office accommodations and by failing to provide any non-disability-based reason for the denial of his petition of academic probation and petition for reinstatement.

(252) It was particularly unreasonable of Pitt Law to receive new, "reasonable" accommodations from the Disability Office but to dismiss Mr. Nouri before it even tried to implement them or the improvement plan Mr. Nouri expressly told the University he was committed to pursuing. By doing so, Pitt Law acted in bad faith.

(253) It was also unreasonable for Pitt Law to inform Mr. Nouri that he could apply for readmission, but then to summarily reject his petition with one sentence.

(254) A one-sentence justification simply stating that the Committee had voted to deny the petition cannot constitute "good faith."

(255) If anything, it reflects a bad faith refusal to engage or deal. The faculty on the Committee could not even be bothered to provide a threadbare explanation of their decision, something Dean Dickinson did nothing to address or correct.

(256) Pitt Law's breach caused Mr. Nouri damages. Mr. Nouri has had to relocate from Pittsburgh to another city to seek new housing and to begin the costly and time-consuming process of applying to other law schools.

(257) Pitt Law's breach also caused Mr. Nouri reliance damages.

(258) Mr. Nouri relied on Pitt Law's representation that he could apply for reinstatement and that it would comply with both its own disability policies and the Federal laws to which it is subject.

(259) Mr. Nouri followed the process identified by Pitt Law, losing important time and inputting considerable effort, only for Pitt Law to tell him with one sentence that he would not be reinstated.

(260) Even though Mr. Nouri reasonably relied on Pitt Law's representations, Pitt Law did not perform.

(261) Mr. Nouri lost the benefit of a Pitt Law education.

(262) Mr. Nouri also incurred the other costs and damages identified in the other counts and the facts section due to Pitt Law's breach.

**WHEREFORE**, Plaintiff Michael Nouri asks this Honorable Court to find that Defendant University of Pittsburgh School of Law breached its contract with him and to award all available legal, equitable, and declaratory relief.

## COUNT V

*Pitt Law violated the Pennsylvania Human Relations Act by engaging in disability discrimination and retaliation.*

(263) Mr. Nouri incorporates the preceding paragraphs by reference.

(264) The PHRA provides that

> [t]he opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any public accommodation and of any housing accommodation and commercial property without discrimination because of face, color, familial status, religious creed, ancestry, ***handicap or disability***, age, sex, national origin, the use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act.[60]

(265) Under the Act, Pennsylvanians have a right to freedom from discrimination when they access places of public accommodation.[61]

---

[60] 43 PA. STAT. AND CONS. STAT. ANN. § 953 (West) (emphasis added).
[61] *Id.* at § 955.

(266) The Act defines "public accommodation" to include, *inter alia*,

> any accommodation . . . which is open to, accepts or solicits the patronage of the general public, including but not limited to . . . kindergartens, primary and secondary schools, high schools, academies, ***colleges and universities***, extension courses and all educational institutions under the supervision of this Commonwealth.[62]

(267) The PHRA defines "handicap or disability" in the same terms as the ADA and Rehabilitation Act.[63]

(268) If the PHRC issues a right-to-sue letter one year after the complainant files an administrative complaint, the complainant may file a PHRA claim in a civil action.[64]

(269) Such civil actions must be brought within two years of the complainant's receipt of the right-to-sue letter.[65]

(270) The PHRC issued a right-to-sue letter on February 3, 2025.

(271) The filing of this Federal Complaint is made less than two years after the issuance of the right-to-sue letter.

(272) Accordingly, Mr. Nouri can now bring a PHRA claim in this civil action.

(273) Mr. Nouri is protected by the PHRA because he has multiple disability diagnoses (OCD, GAD, and ADHD) "that substantially limit[] one or more . . . major life activities" and has "a record of having such an impairment" in the form of his medical records and the material submitted to Pitt requesting disability accommodations.[66]

(274) Mr. Nouri was also "regarded as having such an impairment" by Pitt by virtue of its Disability Office receiving his documentation and sharing accommodation instructions with Pitt Law.[67]

---

[62] *Id.* at § 954(l) (emphasis added).
[63] *Id.* at § 954(p.1).
[64] *See id.* at § 962(c)(1).
[65] *Id.* at § 962(c)(2); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 475 (3d Cir. 2001).
[66] *Id.* at § 954(p.1)(1)-(2).
[67] *Id.* at § 954(p.1)(3).

(275) The specific major life activities limited by Mr. Nouri's disabilities include "learning, reading, concentrating, thinking, and communicating."[68]

(276) Pitt Law discriminated against Mr. Nouri by failing to implement the accommodations the Disability Office informed it that Mr. Nouri was entitled to throughout the time he was enrolled at the University.

(277) Pitt Law further discriminated against Mr. Nouri by forcing him to take sixteen credits during the Spring 2023 semester, even though he had previously been approved to take twelve credits a semester.

(278) Pitt Law also discriminated against Mr. Nouri by failing to account for his disability status when it automatically excluded him from enrollment for the Fall 2023 semester. By that time, Pitt Law knew that Mr. Nouri had disabilities, was entitled to accommodations, and that his grades were suffering for disability-based reasons, especially related to concentrating and working during law school exams.

(279) Pitt Law then continued to discriminate against Mr. Nouri when it failed to implement the July 2023 accommodations that the Disability Office approved.

(280) Instead of implementing these accommodations, Pitt Law continued to disregard Mr. Nouri's disability status by ignoring the difficulties with ADHD, OCD, and anxiety that Mr. Nouri described in his July 2023 petition of academic probation.

(281) As part of this process, Pitt Law also ignored Mr. Nouri's belief that he could improve his GPA with the new accommodations, his commitment to working with Dean Sinsheimer to develop an improvement plan, and the letter from his healthcare provider.

---

[68] 42 U.S.C.A. § 12102(2)(A) (West).

(282) Pitt Law continued to engage in disability discrimination by denying his petition for readmission.

(283) Pitt Law also ignored the role played by the ADHD medication shortage that Mr. Nouri notified the Law School of.

(284) Mr. Nouri submits that this denial (made in August 2024) was retaliatory in nature, as it closely followed the filing of his PHRC complaint.

(285) Even if this denial was not retaliatory, it was discriminatory, as the Committee failed to provide virtually *any* reason for the denial.

(286) This was arbitrary decision-making that failed to account for Mr. Nouri's already expressed commitment to improving his performance by using additional accommodations and working with Dean Sinsheimer to develop and follow an improvement plan.

(287) Contrary to the banner on Pitt Law's website declaring "You Are Welcome Here," with this decision, Pitt Law made clear that Mr. Nouri was not welcome and that it had zero interest in implementing reasonable accommodations approved by the Disability Office and an improvement plan developed with *one of its own deans*.[69]

(288) Pitt Law did not even give Mr. Nouri a chance to improve with these accommodations.

(289) This is all the more egregious because the accommodations would not have imposed an undue burden or changed the nature of Pitt Law's programming. Providing additional time for one student to complete tests imposes no additional expenses and no change to the substance of Pitt Law's program.

---

[69] *About*, UNIV. OF PITT. SCH. OF L., https://www.law.pitt.edu/about (last accessed Apr. 28, 2025) ("You Are Welcome Here[.] Pitt is an esteemed academic and economic institution consistently ranked among the top universities in the country.").

(290) Indeed, the Disability Office had identified the University's Testing Center, a designated place for students who need testing accommodations, as a readily available option.

(291) The Disability Office had already determined that the accommodations were necessary and reasonable.

**WHEREFORE**, Plaintiff Michael Nouri respectfully requests that this Honorable Court find that Defendant University of Pittsburgh School of Law violated the Pennsylvania Human Relations Act and award him all legal, equitable, and declaratory remedies available under the Act, including— but not limited to—compensatory damages.

## COUNT VI

*Pitt Law violated the Pennsylvania Fair Educational Opportunities Act by engaging in disability discrimination and retaliation. These actions constitute unfair educational practices outlawed by the Act.*

(292) Mr. Nouri incorporates the preceding paragraphs by reference.

(293) The PFEOA makes it the policy of the Commonwealth of Pennsylvania to provide equal educational opportunities regardless of a student's handicap or disability status.[70]

(294) Under the Act, "educational institution" means, *inter alia*, "any institution of post-secondary grade."[71]

(295) The University of Pittsburgh is specifically listed as a "state-related" educational institution within the Act.[72]

(296) The PFEOA defines "handicap or disability" in the same terms as the PHRA.[73]

---

[70] 24 PA. STAT. AND CONS. STAT. ANN. § 5002(a)-(b) (West).
[71] *Id.* at §§ 5002(c), 5003(3).
[72] *Id.* at § 5009(a).
[73] *Id.* at § 5003(7).

(297) The PFEOA prevents educational institutions from excluding, limiting, discriminating against, expelling, suspending, and punishing students based on disability. Such actions constitute "unfair educational practices."[74]

(298) Retaliation against someone for using the available PFEOA complaint procedures is also considered an unfair educational practice.[75]

(299) The PHRC administers the PFEOA[76] and processes PFEOA complaints.[77]

(300) The complaint process for the PFEOA is the same as that used for the PHRA.[78]

(301) PFEOA claims are subject to the same administrative exhaustion requirement as the PHRA. Complainants may file a civil action predicated on the PFEOA if the PHRC dismisses the complaint or no conciliation agreement is entered into within one year of the filing of a complaint. PFEOA civil suits must be brought within two years of receipt of a "notice" from the PHRC.[79]

(302) Courts may order reinstatement or admission, or award reimbursement of tuition and fees, or "any other legal or equitable relief as the court deems appropriate."[80]

(303) The PHRC issued a right-to-sue letter on February 3, 2025.

(304) The filing of this Federal Complaint is made less than two years after the issuance of the right-to-sue letter.

(305) Accordingly, Mr. Nouri can now bring a PFEOA claim in this civil action.

(306) Mr. Nouri is protected by the PFEOA because he has multiple disability diagnoses (OCD, GAD, and ADHD) "that substantially limit[] one or more . . . major life activities" and has "a record

---

[74] *Id.* at § 5004(a)(1), (2)-3).
[75] *Id.* at § 5004(4).
[76] *Id.* at § 5005.
[77] *Id.* at § 5006(7).
[78] *Id.* at § 5007.
[79] *Id.* at § 5007.1(a)-(b).
[80] *Id.* at § 5007.1(c).

of such an impairment" in the form of his medical records and the material submitted to Pitt requesting disability accommodations.[81]

(307) Mr. Nouri was also "regarded as having such an impairment" by Pitt by virtue of its Disability Office receiving his documentation and sharing accommodation instructions with Pitt Law.[82]

(308) The specific major life activities limited by Mr. Nouri's disabilities include "learning, reading, concentrating, thinking, and communicating."[83]

(309) Pitt Law discriminated against Mr. Nouri by failing to implement the accommodations the Disability Office informed it that Mr. Nouri was entitled to throughout the time he was enrolled at the University.

(310) Pitt Law further discriminated against Mr. Nouri by forcing him to take sixteen credits during the Spring 2023 semester, even though he had previously been approved to take twelve credits a semester.

(311) Pitt Law also discriminated against Mr. Nouri by failing to account for his disability status when it automatically excluded him from enrollment for the Fall 2023 semester. By that time, Pitt Law knew that Mr. Nouri had disabilities, was entitled to accommodations, and that his grades were suffering for disability-based reasons, especially related to concentrating and working during law school exams.

(312) Pitt Law then continued to discriminate against Mr. Nouri when it failed to implement the July 2023 accommodations that the Disability Office approved.

---

[81] *Id.* at § 5003(7)(i)-(ii).
[82] *Id.* at § 5003(7)(iii).
[83] 42 U.S.C.A. § 12102(2)(A) (West).

(313) Instead of implementing these accommodations, Pitt Law continued to disregard Mr. Nouri's disability status by ignoring the difficulties with ADHD, OCD, and anxiety that Mr. Nouri described in his July 2023 petition of academic probation.

(314) As part of this process, Pitt Law also ignored Mr. Nouri's belief that he could improve his GPA with the new accommodations, his commitment to working with Dean Sinsheimer to develop an improvement plan, and the letter from his healthcare provider.

(315) Pitt Law continued to engage in disability discrimination by denying his petition for readmission.

(316) Pitt Law also ignored the role played by the ADHD medication shortage that Mr. Nouri notified the Law School of.

(317) Mr. Nouri submits that this denial (made in August 2024) was retaliatory in nature, as it closely followed the filing of his PHRC complaint.

(318) Even if this denial was not retaliatory, it was discriminatory, as the Committee failed to provide virtually *any* reason for the denial.

(319) This was arbitrary decision-making that failed to account for Mr. Nouri's already expressed commitment to improving his performance by using additional accommodations and working with Dean Sinsheimer to develop and follow an improvement plan.

(320) Contrary to the banner on Pitt Law's website declaring "You Are Welcome Here," with this decision, Pitt Law made clear that Mr. Nouri was not welcome and that it had zero interest in implementing reasonable accommodations approved by the Disability Office and an improvement plan developed with *one of its own deans*.[84]

---

[84] *About*, UNIV. OF PITT. SCH. OF L., https://www.law.pitt.edu/about (last accessed Apr. 28, 2025) ("You Are Welcome Here[.] Pitt is an esteemed academic and economic institution consistently ranked among the top universities in the country.").

(321) Pitt Law did not even give Mr. Nouri a chance to improve with these accommodations.

(322) This is all the more egregious because the accommodations would not have imposed an undue burden or changed the nature of Pitt Law's programming. Providing additional time for one student to complete tests imposes no additional expenses and no change to the substance of Pitt Law's program.

(323) Indeed, the Disability Office had identified the University's Testing Center, a designated place for students who need testing accommodations, as a readily available option.

(324) The Disability Office had already determined that the accommodations were necessary and reasonable.

(325) Mr. Nouri submits that all of these acts and omissions constitute unfair educational practices because they show that Pitt Law excluded Mr. Nouri from its program, limited his access to the same, discriminated against him based on the same, expelled him based on the same, and retaliated against him for participating in the PFEOA complaint process.

**WHEREFORE**, Plaintiff Michael Nouri respectfully requests that this Honorable Court find that Defendant University of Pittsburgh School of Law violated the Pennsylvania Fair Educational Opportunities Act and award him all legal, equitable, and declaratory remedies available under the Act, including—but not limited to—tuition and fee reimbursement and compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Nouri respectfully requests that this Honorable Court enter an order:

(326) Assuming jurisdiction of this case;

(327) Declaring that Defendant University of Pittsburgh School of Law violated Plaintiff's rights under the Americans with Disabilities Act and awarding him all remedies available under the same;

(328) Declaring that Defendant violated Plaintiff's rights under the Rehabilitation Act and awarding him all remedies available under the same;

(329) Declaring that Defendant violated Plaintiff's due process rights under the Fourteenth Amendment and awarding him all remedies available under Section 1983;

(330) Declaring that Defendant breached its contract with Plaintiff and awarding him all available remedies;

(331) Declaring that Defendant violated Plaintiff's rights under the Pennsylvania Human Relations Act and awarding him all remedies available under the same;

(332) Declaring that Defendant violated Plaintiff's rights under the Pennsylvania Fair Educational Opportunities Act and awarding him all remedies available under the same, including— but not limited to—reimbursement of his tuition and fees;

(333) Awarding compensatory damages;

(334) Awarding reasonable attorneys' fees; and

(335) Awarding any other relief required by law and the interests of justice.

Respectfully submitted,

RUDER LAW, LLC

*/s/ Kristen Weidus*
Kristen C. Weidus, Esq.
PA Attorney ID 313486
One Oxford Center
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Telephone: (412) 281-4959
Email: kristenweidus@ruderlaw.com